IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-OA5, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OA5, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LEN C. PERRY JR., an individual; NATHAN JON LEWIS, an individual; and 3925 KAMEHAMEHA RD PRINCEVILLE, HI 96722, LLC, a Hawaii limited liability corporation,<br><br>Defendants. | CIVIL NO. 17-00297 DKW-RLP<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The Bank of New York Mellon ("BONY Mellon") moves for summary judgment on its claims for quiet title and slander of title, and request for declaratory relief against Defendants Len C. Perry, Nathan J. Lewis, and 3925 Kamehameha Rd Princeville, HI 96722, LLC (the "LLC"). The claims arise from Defendants'

improper and fraudulent recordings, which have clouded title to Plaintiff's real property and interfered with its property rights.  Defendants, without proper legal authority, filed financing statements misrepresenting debts owed by BONY Mellon, and eventually, recorded deeds purporting to convey title to themselves.  Because Defendants falsely held themselves out as owners of record of the property, and deprived Plaintiff of the ability to market, sell and/or collect rent from the property, BONY Mellon continues to incur damages.  The uncontroverted summary judgment record establishes that Defendants have no legal basis for claiming title to the property, which is undisputedly vested in BONY Mellon, and accordingly, the Court GRANTS the Motion for Summary Judgment on the second, third, and fifth claims for relief in the Complaint.

## BACKGROUND

**I.    Factual Background**

BONY Mellon was the foreclosing mortgagee on a Mortgage issued to non-party borrowers who had defaulted on their loan.  The $1,129,500 loan to the borrowers was secured by a Mortgage on real property in Princeville, Kauai (the "Property") that was recorded on July 15, 2005 in the State of Hawaii Bureau of

Conveyances. Ex. A (Mortgage), Dkt. No. 52-2.[1] After the borrowers failed to make their monthly payments due under the loan, BONY Mellon foreclosed on the Property in a judicial foreclosure action, and the Property was conveyed to BONY Mellon following the sale. Ex. B (8/14/15 Decree of Foreclosure & Order Confirming Foreclosure Sale), Dkt. No. 52-3; Ex. C (9/28/16 Am. Order Confirming Foreclosure Sale), Dkt. No. 52-4. On October 19, 2016, a Commissioner's Deed was recorded transferring title to the Property in fee simple to BONY Mellon. Ex. D (Commissioner's Deed), Dkt. No. 52-5.

During the same time period, Defendants recorded a number of fraudulent documents in the State of Hawaii Bureau of Conveyances that purported to transfer legal title to the Property to Defendants. On April 26, 2016, for example, Perry recorded a "Notice of Default/Notice of Fault - Opportunity to Cure - Default Affidavit" ("Notice of Fault") in the Bureau of Conveyances.[2] Ex. E (Notice of

---

[1] The Court may consider matters that are the proper subject of judicial notice, pursuant to Federal Rule of Evidence 201, including adjudicative facts capable of accurate and ready determination, and facts that are a matter of public record from publicly available and recorded documents, including state court filings and documents filed with the State of Hawaii Bureau of Conveyances. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Barber v. Ohana Military Communities, LLC*, 2014 WL 3529766, *4 (D. Haw. July 15, 2014). Accordingly, the Court GRANTS Plaintiff's Request For Judicial Notice of Exhibits A through N. Dkt. No. 53.

[2] In the Notice of Fault, Perry claims that:

    a.    He sent BNYM a "Bonafide Offer/Offer of Performance/Notice of Tender to purchase" the Property on or around January 15, 2016;

Fault), Dkt. No. 52-6. The Notice of Fault was recorded without BONY Mellon's knowledge, consent, or agreement. Decl. of Caroline Trinkley ¶¶ 13–15, Dkt. No. 52-1. BONY Mellon contends that its silence or failure to respond to Perry's purported "Bonafide Offer/Offer of Performance/Notice of Tender" to purchase the Property, is not, and was not, a concession or admission that it acquiesced to anything presented in the Notice of Fault. Nor did BONY Mellon accept any purchase offer by Perry, or any other Defendant, or make any implicit or explicit admission regarding the statements in Perry's correspondence. Trinkley Decl. ¶¶ 14–15.

On June 27, 2016, Perry recorded a UCC Financing Statement ("First UCC Statement") in the Bureau of Conveyances in which he listed himself as both the Debtor and Secured Party in relation to collateral described as "Registered Lien #

---

b. He mailed BNYM a "NOTICE OF INTERNATIONAL COMMERCIAL CLAIM IN ADMIRALTY ADMINISTRATIVE REMEDY - FIRST NOTICE OF DEMAND AND SETTLEMENT FOR THE CLOSING OF THE ESCROW" on February 12, 2016 pursuant to which BNYM was given three days to "settle and close the escrow";
c. He sent BNYM a "SECOND NOTICE OF DEMAND AND SETTLEMENT FOR THE CLOSING OF ESCROW" on March 1, 2016 pursuant to which BNYM was again given several days to respond; and
d. Due to BNYM's purported failure to respond to his various correspondence, BNYM was "at fault" and "accepted the bonafide offer AND admitted to the statements, claims and ANSWERS" in Perry's "Notice of International Commercial Claim Administrative Remedy, File #3925KamehamehaPVH."

Decl. of Caroline Trinkley ¶ 12.

1A59600612 for $3,981,377."[3] Ex. F (First UCC Statement), Dkt. No. 52-7. On July 26, 2016, Perry recorded an amendment to the First UCC Statement in the Bureau of Conveyances. Ex. G (Am. First UCC Statement), Dkt. No. 52-8. The First UCC Statement and amendment were recorded without BONY Mellon's knowledge, consent, or agreement, and the UCC-1 statements falsely identified BONY Mellon as a debtor. Trinkley Decl. ¶¶ 16–18.

Perry recorded several documents with the Bureau of Conveyances on August 22, 2016, again without BONY Mellon's knowledge or consent. He recorded a "Notice of Lien Affidavit and Notice of Default," in which Perry claims that BONY Mellon is indebted to him in the amount of $3,981,377.19 due to its "fail[ure] to answer the.... Private Administrate Inquiry" and its "documented attempts to deny and deprive [Perry] of his rights and property[.]" Ex. I (Notice of Lien Affidavit), Dkt. No. 52-10. Perry also recorded a "Substitution of Trustee and Full Reconveyance," asserting that he is the "Beneficiary, under that certain claim

---

[3] A Uniform Commercial Code Financing Statement is a legal form that a creditor files to give notice that the creditor has a security interest in the personal property of a debtor, and is generally filed with a state agency where the debtor resides to "perfect" the creditor's security interest in the debtor's property. *See United States v. Halajian*, 2014 WL 4968287, at *1 (E.D. Cal. Sept. 29, 2014) ("The filing of a UCC–1 Statement creates a lien against the debtor's property and also establishes priority in case of debtor default or bankruptcy. To file a UCC–1 Statement, a debt must be owed to the filer and the debtor must authorize the filing of the UCC–1 Statement."). Courts in this circuit have routinely granted declaratory relief to expunge sham liens filed against government officials. *See, e.g.*, *United States v. Marty*, 2011 WL 4056091, at *8 (E.D. Cal. Sept. 12, 2011) (sham UCC Financing Statements filed against IRS and Department of Justice officials held null, void, and of no legal effect).

number 3925KamehamehaPVH Notice of Default" and that RCO Hawaii, LLLC and Plaintiff are the "Trustee(s)"  Ex. H (Substitution and Reconveyance), Dkt. No. 52-9.  Perry, acting as Beneficiary, purported to designate the LLC Defendant as "Foreclosure Trustee and [to] hereby RECONVEY thereunder."  *Id.*  Defendants also recorded another amended UCC financing statement in the Bureau of Conveyances, without Plaintiff's knowledge or consent.  Ex. J. (Am. UCC Statement), Dkt. No. 52-11.

On September 14, 2016, Defendants recorded an "Affidavit of Foreclosure" in which Lewis purported to act as the "foreclosure trustee" pursuant to a "Financing Statement Lien" recorded on July 27, 2016.  Ex. K (Aff. of Foreclosure), Dkt. No. 52-12.  The Affidavit of Foreclosure, filed without BONY Mellon's knowledge, purports to foreclose on the Lien and take the Property as collateral for the benefit of Perry.  *Id.*  The LLC is purportedly substituted "as to the Trustee to liquidate said trust with a Substitution and Full Re-Conveyance Notice," and the "Trustee, substituted [LLC] is moving in accordance with federal and Hawaii Statutes carrying out the Non-Judicial Foreclosure."  *Id.*[4]

---

[4]The Affidavit of Foreclosure states, in part:

> Upon the reception of the 'Assignment of Lien' (exhibit "C"), recorded in the Hawaii State Bureau of Conveyances on August 22nd at 2016 3:29 pm, Doc No. A-60780953, and the 'Substitution of Trustee and Full Re-Conveyance', recorded

On October 14, 2016, Defendants recorded another UCC Financing Statement ("Second UCC Statement") in the Bureau of Conveyances, listing BONY Mellon as the debtor, the Defendant LLC as the secured party with Lewis as an additional secured party, and listing the collateral as the Affidavit of Foreclosure recorded on September 14, 2016, with a total collateral debt of $3,981,377.19. Ex. L. (Second UCC Statement); Dkt. No. 52-13

On November 9, 2016, the LLC recorded in the Bureau of Conveyances a Warranty Deed ("Perry Warranty Deed") purporting to transfer title to the Property from the LLC to Perry. Ex. M, Dkt. No. 52-14. Then, on January 10, 2017, Perry recorded a conveyance ("Lewis Warranty Deed") whereby Perry, as grantor, purportedly transferred title to the Property to Lewis, as grantee. Ex. N, Dkt. No. 52-15.

According to BONY Mellon, it is not indebted to Defendants, and never owed Defendants $3,981,377.19 or any other sum of money. BONY Mellon did not receive any monies, benefit, value, or consideration for the purported conveyances

---

in the Hawaii State Bureau of Conveyances on August 22nd 2016 at 3:29 pm, Doc No. A-60780952 (exhibit "D"), it is my job to Foreclose on said 'Lien' and take the real property located at 3925 Kamehameha Road, in Princeville Hawaii with a zip code of 96722 and a Tax Map Key of 540140260000 as collateral; to hold and/or to rent out for the benefit of the Beneficiary Secured Party Creditor Len C. Perry, Jr. until liquidation of said Trust is complete and all outstanding debts are satisfied and paid to the Beneficiary.

Ex. K at 3.

of the Property to Defendants, and did not ever authorize or intend for any Defendant to record any documents relating to the Property. BONY Mellon only became aware of Defendants' fraudulent recordings when its agent, New Penn Financial, LLC dba Shellpoint Mortgage Servicing, as attorney-in-fact, began to attempt to market the Property for sale and discovered Defendants' purported "tenants" residing at the Property. Trinkley Decl. ¶¶ 33–34.

Plaintiff asserts that the Perry and Lewis Warranty Deeds currently prevent it from taking possession of the Property, selling the Property with free and clear title, and collecting any rents on the Property. Trinkley Decl. ¶ 35. According to Plaintiff, these filings have slandered BONY Mellon's title and impaired its use and enjoyment of the Property.

## II. Procedural Background

BONY Mellon filed this action on June 21, 2017, seeking cancellation of certain instruments based on Defendants' improper and fraudulent recordings in the land records relating to Plaintiff's title to real property, including the deeds purporting to convey title to Defendants. *See* Compl., Dkt. No. 1. The Complaint

asserts five claims against Defendants for cancellation of instruments, quiet title, slander of title, unjust enrichment, and declaratory judgment. Compl. ¶¶ 39–93.[5]

BONY Mellon seeks summary judgment on its second, third, and fifth causes of action for quiet title, slander of title, and declaratory relief. It contends that Defendants' claim to title, premised on a "Notice of International Claim within the Admiralty Administrative Remedy," is unenforceable. Lewis and Perry did not file timely oppositions to the Motion.[6]

## STANDARD OF REVIEW

Because Defendants are proceeding pro se, the Court liberally construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832

---

[5]On August 2, 2017, Lewis, proceeding pro se, filed an Answer, in which Lewis attempted to respond to the Complaint on behalf of all Defendants. 8/2/17 Answer, Dkt. No. 17. Lewis purported to "act[] as Trustee for the Len C. Perry, Jr. account," as "the authorized Trustee [with] a Special Power of attorney over this matter to represent Len C. Perry, Jr. [] as his agent." 8/2/17 Answer, ¶¶ A, K. Lewis also avers that he is "the sole member of 3925 Kamehameha Rd Princeville HI 96722, LLC." *Id.* ¶ L. On December 20, 2017, Perry's "Answer to Complaint Affidavit; Affidavit of Negative Averment" was stricken. Dkt. No. 46. Perry, proceeding pro se, filed an Amended Answer on December 8, 2017. Dkt. No. 44. On November 27, 2017, the Court dismissed Defendants' Amended Counter-Complaint with leave to amend, but no amended counterclaim was filed. Dkt. No. 41. On November 1, 2017, default was entered against the LLC pursuant to Federal Rule of Civil Procedure 55. Dkt. No. 39. However, as of the date of this Order, there has been no motion for default judgment.

[6]On August 9, 2018, Lewis filed an untimely Opposition to Plaintiff's Motion for Summary Judgment. Dkt. No. 58. The deadline for the opposition was July 26, 2018. Lewis and Perry also each filed a Motion to Dismiss, on August 9 and 11, 2018, respectively. Dkt. Nos. 57 and 60. But the deadline for filing dispositive motions in this matter was May 23, 2018. Because neither was granted leave of court to extend or amend the deadlines in this matter, and because there was no evident good cause for doing so, the untimely motions and briefs were stricken and not considered by the court. Dkt. Nos. 59 and 61.

F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under the substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the Court draws all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). There is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party. *Id*. at 586.

Although its motion for summary judgment is unopposed, BONY Mellon retains the burden to show the absence of any genuine issue of material fact. *See*

*Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 (9th Cir. 1994); *Matter of Healy Tibbitts Builders, Inc.*, 290 F. Supp. 3d 1126, 1131 (D. Haw. 2017). "Trial courts resolving unopposed summary judgment motions have an obligation to evaluate independently the sufficiency of the moving papers." *Lopez–Gomez v. Sessions*, 693 Fed. Appx. 729, 731 (9th Cir. 2017). The Court has independently evaluated the Motion, and viewing the evidence in the light most favorable to the non-moving parties, the Court finds that BONY Mellon has met its burden on summary judgment.

## DISCUSSION

The unrebutted record establishes that BONY Mellon is the owner of the Property pursuant to the Commissioner's Deed recorded in the Bureau of Conveyances on October 19, 2016. Despite Perry, Lewis, and/or the LLC's improper recording of numerous sham documents in 2016 and 2017,[7] Defendants have no valid legal claim to title to the Property.

Although Defendants assert title to the Property under a fictitious "Notice of International Commercial Claim in Admiralty Administrative Remedy," the claim is

---

[7] Based upon the uncontroverted record, the Court determines that Defendants recorded the following sham documents in the Bureau of Conveyances, without legal authority or the consent of Plaintiff: Notice of Fault, Ex. E; First UCC Statement, Ex. F; Amendment to the First UCC Statement, Ex. G; Substitution and Reconveyance, Ex. H; Notice of Lien Affidavit, Ex. I; Amended UCC Statement, Ex. J; Affidavit of Foreclosure, Ex. K; Second UCC Statement, Ex. L; Perry Warranty Deed, Ex. M; and Lewis Warranty Deed, Ex. N.

legally without merit, and BONY Mellon never consented to any of Defendants' conduct. Courts refuse to recognize this type of patently frivolous "International Commercial Claim." *See, e.g.*, *United States v. Wolfe*, No. 08-0088 JAM EFB, 2008 WL 4684779, at *3 (E.D. Cal. Oct. 2, 2008), *report and recommendation adopted*, (E.D. Cal. Oct. 27, 2008) (rejecting federal jurisdiction based on theory that "the failure of the IRS to acknowledge and oppose the Wolfes' 'administrative filing' of their 'Petition for Agreement and Harmony in the Nature of a Notice of International Commercial Claim Within the Admiralty,'" because such a "theory of estoppel relies entirely upon legal fictions"); *Hibben v.Countrywide Home Loans, Inc.,* No. 05 C 4262, 2005 WL 3262971 (N.D. Ill. Nov. 29, 2005) (dismissing complaint with prejudice after finding that "several courts that have considered 'International Commercial Claims' have found them to be without merit").[8] The

---

[8]*See also Peters v. BMW of N. America, Inc.,* No. Civ.A. DKC 2004–3451, 2005 WL 2250785, at *3–4 (D. Md. Sept. 15, 2005) (enjoining pro se litigant from filing additional "senseless and vexatious filings," including any "involuntary bankruptcy proceeding, liens, UCC Financing Statements, and other encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors, without first seeking and obtaining leave [of court]"); *United States v. Dutson,* No. CIV. 04–2585 PHX EHC, 2005 WL 605381, at *1–3 (D. Ariz. Mar. 10, 2005) (rejecting the defendants' attempt to pay a tax debt by accepting it for value and returning it for settlement and closure, and holding that documents, including "Notice of Default," have no legal force or effect and are unenforceable); *Brown v. McQuaid*, No. CIV. 06-551-SLR, 2007 WL 1425497, at *1 (D. Del. May 9, 2007) (citing *Mock v. Merck & Co., Inc.,* No. 3:06mc1/MCR/EMT, 2006 WL 2094677 (N.D. Fla. Jul. 27, 2006)) (admiralty administrative remedy judgment is not enforceable).

improperly recorded documents, asserting a claim to title to the Property, have no legal force or effect.

Because BONY Mellon's title to the Property has been slandered and Defendants have further interfered with Plaintiff's right, use and enjoyment of the Property, BONY Mellon's Motion is granted as to the second, third, and fifth claims in the Complaint.

I.  **BONY Mellon Is Entitled to Summary Judgment on its Quiet Title Claim**

Section 669-1(a) of the Hawaii Revised Statutes ("HRS") provides a cause of action for quiet title. The statute states that an "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." HRS § 669–1(a). The plaintiff has the burden to prove title to the land in dispute, *Makila Land Co., LLC v. Kapu*, 114 Hawai'i 56, 58, 156 P.3d 482, 484 (App. 2006), either by establishing that it has paper title to the property or that it holds title by adverse possession. *Maui Land & Pineapple Co., Inc. v. Infiesto*, 76 Hawai'i 402, 407–08, 879 P.2d 507, 512–13 (1994). While it is not necessary for a plaintiff to have perfect title to establish a prima facie case, it must at least prove that it has a substantial interest in the property and that its title is superior to that of the defendant. *Makila Land Co., LLC*, 114 Hawai'i at 58, 156 P.3d at 484.

> A defendant need not prove that he has perfect title to prevent plaintiff from quieting title at the summary judgment stage. A defendant may defeat a motion for summary judgment for quiet title by raising a genuine issue of material fact as to which party has superior title.

*Shayefar v. Kaleleiki*, No. CIV. 14-00322 HG-KSC, 2015 WL 4254857, at *5 (D. Haw. July 13, 2015) (citing *Alexander & Baldwin, Inc. v. Silva*, 248 P.3d 1207, 1213–15 (Haw. App. 2011)).

BONY Mellon has met its burden of establishing paper title to the Property pursuant to the Commissioner's Deed, recorded on October 19, 2016. *See* Ex. D. In opposition, Defendants fail to raise any genuine issue of material fact as to the superiority of Plaintiff's title to the Property. Moreover, Defendants have no lawful claim to title, nor any right, lien, or interest in or to the Property by virtue of the sham documents improperly recorded at the Bureau of Conveyances. There is no genuine dispute of fact that Plaintiff did not convey any right, interest, or title to the Property to Lewis, Perry, or the LLC. Trinkley Decl. ¶¶ 33–35. BONY Mellon is entitled to a judgment, as requested, quieting title in and to the Property in favor of itself and against Defendants, *nunc pro tunc* as of October 2016, when the Commissioner's Deed was recorded. *See* Mem. in Supp. at 14, Dkt. No. 51-1. The Motion is therefore granted on the second claim for relief in the Complaint.

## II. The Motion Is Granted as to the Third Claim for Slander of Title

The Court next addresses BONY Mellon's claim for slander of title. Under Hawaii law, the following elements are required to establish a claim for slander of title: (1) ownership of or interest in the property by the plaintiff; (2) falsity of the words published; (3) malice of the defendant in publishing the false statements; (4) publication to some person other than the owner; (5) publication in disparagement of plaintiff's property or the title to it; and (6) special damages proximately resulting from such publication. *Shayefar v. Kaleleiki*, No. CIV. 14-00322 HG-KSC, 2014 WL 5023498, at *8 (D. Haw. Oct. 7, 2014) (citing *Isobe v. Sakatani*, 127 Hawai'i 368, 279 P.3d 33, 42–43 (App. 2012)).

Defendants, as noted above, have no title or interest in the Property. The numerous improper filings and documents recorded with the Bureau of Conveyances include false statements attested to by Lewis and Perry—purportedly sworn under penalty of perjury—which were knowingly and demonstrably untrue when made. For example, the Notice of Lien falsely states BONY Mellon is indebted to Perry in the amount of $3,981,377.19, due to its failure to answer earlier fraudulent communications and resulting default. Ex. I. The September 14, 2016 Affidavit of Foreclosure is likewise false because Lewis had no lawful authority to act as "foreclosure trustee" pursuant to improperly filed financing statements or liens, and was without authority to take the Property as collateral for the benefit of

15

Perry. Ex. K. In short, these recordings, among others published by Defendants, include false statements disparaging Plaintiff's title to the Property.

BONY Mellon further established that the false statements were made with malice.[9] The patently false statements in the sham documents, at best, were "made in reckless or wanton disregard of the rights of [Plaintiff] . . . with an intent to deceive or injure, or to vex or annoy, or with no legal justification." *Isobe*, 127 Hawaiʻi at 380, 279 P.3d at 45 (quoting 50 Am.Jur.2d *Libel and Slander* § 531 (2006)). BONY Mellon incurred special damages, including litigation costs and lost income, as a result of Defendants' intentionally false, and legally unjustified recordings. *See* Trinkley Decl. ¶ 36; Decl. of Neera Jandal ¶ 3, Dkt. No. 52-17 (litigation costs); Decl. of Donna Holevoet ¶¶ 6–7, Dkt. No. 52-18 (lost rental value of the Property from Nov. 2016 to present).

---

[9]Hawaii courts have described the malice element for slander claims in the following manner:

> Malice, express or implied, in the making of the slanderous statement is an essential ingredient of a cause of action for slander of title. While actual malice must be shown—that is, knowledge by the defendants that the disparaging statements were false or were made with reckless disregard for their truth or falsity—the malice necessary for a finding of liability for slander of title is not malice in its worst sense. An act will be deemed malicious if made in reckless or wanton disregard of the rights of another and with personal ill-will, or with an intent to deceive or injure, or to vex or annoy, or with no legal justification. Malice is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant.

*Isobe*, 127 Hawaiʻi at 380, 279 P.3d at 45 (quoting 50 Am.Jur.2d *Libel and Slander* § 531 (2006) (internal footnotes omitted)).

As demonstrated by BONY Mellon: (1) the false publications were not executed by or at its direction, (2) it did not agree, consent, or enter into any agreement or contract to convey or transfer title to the Property to Defendants; (3) it was not indebted to Defendants for any sum of money and did not pledge the Property as collateral for any debt purportedly owed to Defendants; (4) it did not receive any monies, benefit, value, or consideration to support the purported conveyances to Defendants; (5) the false publications were recorded with the intent to deprive it of its right, title and interest in the Property; and (6) the Perry and Lewis Warranty Deeds cloud its title, impair the marketability of the Property, and prevent it from taking possession of and from collecting any rents on the Property. *See* Mem. in Supp. at 16–17; Trinkley Decl. ¶¶ 34–33. In light of the Court's independent review of the summary judgment record, the uncontroverted facts establish that Defendants improperly published, by recording with the Bureau of Conveyances, numerous sham instruments without justification and did so with malice, causing Plaintiff to incur damages.

Because BONY Mellon has met its burden of establishing that there is no genuine issue of material fact for trial, the Court grants the Motion on the third claim for slander of title.

## III. BONY Mellon Is Entitled to the Declaratory Relief Requested

Because no issues of material fact remain as to the claims for quiet title and slander of title, the Court grants BONY Mellon's request for declaratory relief.[10] As detailed herein, BONY Mellon has established its entitlement to a declaration that the following documents were fraudulently recorded, and are therefore invalid *nunc pro tunc*, as of the date of their respective recording: Notice of Fault, Ex. E; First UCC Statement, Ex. F; Amendment to the First UCC Statement, Ex. G; Substitution and Reconveyance, Ex. H; Notice of Lien Affidavit, Ex. I; Amended UCC Statement, Ex. J; Affidavit of Foreclosure, Ex. K; Second UCC Statement, Ex. L; Perry Warranty Deed, Ex. M; and Lewis Warranty Deed, Ex. N.

The Court further declares and orders as follows: (1) Defendants have no right, title, estate, lien, or interest in or to the Property; (2) BONY Mellon is the true owner of the Property, free and clear of any claims by Defendants; and

---

[10] Although asserted as an independent cause of action, the Court views the claim for declaratory relief as a remedy. *Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1028 n.1 (D. Haw. 2012). "A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201); *see also Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009) ("[T]he Court finds that the declaratory relief Plaintiffs seek is entirely commensurate with the relief sought through their other causes of action. Thus, Plaintiffs' declaratory relief claim is duplicative and unnecessary."); *Ballard v. Chase Bank USA, N.A.*, Civ. No. 10–00790 L(POR), 2010 WL 5114952, at *8 (S. D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (alteration in original, citation omitted).

(3) Defendants, and their agents, servants, employees, and any and all persons acting under, in concert with, or on their behalf are enjoined from recording any further fraudulent instruments in the Bureau of Conveyances relating to the Property, absent leave of Court.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, Dkt. No. 51, is GRANTED. The Court grants summary judgment to BONY Mellon against Lewis and Perry on the second, third, and fifth claims for relief in the Complaint.

IT IS SO ORDERED.

DATED: September 11, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*The Bank of NY Mellon v. Perry et al.*, Civil No. 17-00297 DKW-RLP; **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**